UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CORTNEY PAINTER,** | ) |
| **Claimant,** | ) ) ) |
| vs. | ) ) Case No. 2:17-CV-1531-CLS ) |
| **NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,** | ) ) ) ) |
| **Defendant.** | ) ) |

## MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Cortney Painter, commenced this action on September 9, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for child disability benefits and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ's hypothetical question to the vocational expert failed to include all of her limitations, and that new evidence submitted for the first time to the Appeals Council ("AC") should have changed the administrative decision. Upon review of the record, the court concludes that claimant's second contention has merit, and the file should be remanded to the Commissioner for further consideration of the new evidence.

> When a claimant submits new evidence to the AC, the district court must consider the entire record, *including the evidence submitted to the AC*, to determine whether the denial of benefits was erroneous. *Ingram,* 496 F.3d at 1262. Remand is appropriate when a district court fails to consider the record as a whole, *including evidence submitted for the first time to the AC*, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alteration and emphasis supplied). The Eleventh Circuit has "recognized that medical opinions based on treatment occurring *after* the date of the ALJ's decision may be chronologically relevant." *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)) (emphasis supplied). For example, a treatment provider may be aware

that a claimant's current medical condition also existed before the administrative decision, or there may be evidence that the claimant's functional abilities did not decline during the period following the administrative decision. *Washington,* 806 F.3d at 1322; *Clough v. Social Security Administration, Commissioner,* 636 F. App'x 496, 497-98 (11th Cir. 2016).

The ALJ's administrative decision was issued September 29, 2016.[1] The first item of new evidence submitted by claimant to the Appeals Council was a May 16, 2017 letter from Cheyenne E. Whisenant, an adult out-patient therapist at Mountain Lakes Behavioral Healthcare. Ms. Whisenant stated:

> Cortney's symptoms include extreme fear of water, sinks, bathtubs, and virtually anything else that water can flow from. She also has extreme, unexplainable emotional outbursts. Cortney has had significant auditory and visual hallucinations in the past which are reported as being episodes of having super human strength and destruction of her surroundings. Cortney reports being medication and treatment compliant. Cortney acknowledges that she loses control and has become dangerously violent toward others. Cortney has intense fears such as "the sink drain sucking her down into it." This intense fear of water has caused significant impairment in client's daily functioning to include losing many of her teeth and dangerously poor hygiene. She has an extreme and intense abuse history and has a diagnosis of schizoaffective disorder-depressive type.

Tr. 31.

The second item of new evidence submitted by claimant to the Appeals Council is an undated letter from Martha Painter, claimant's grandmother and adoptive

---

[1] Tr. 11.

mother. Ms. Painter stated that the police had been called to their home for a welfare check due to claimant's out-of-control behavior, that claimant builds "nests" around herself with clothes, cans, and garbage, that claimant sometimes scratched and bruised her, that claimant cried uncontrollably after leaving her administrative hearing, and that claimant destroyed her washer, dryer, stove, and dishwasher. She also discussed claimant's various phobias, including water, riding in a car, bridges, loud noises, being where it is clean, having an empty sink, and having guests in her home.[2]

The third piece of new evidence submitted by claimant to the Appeals Council is an undated letter from Naira Serian, a friend of Martha Painter's. Ms. Serian stated that, during the seven years she had known claimant,

> there has been a significant decline in her status of functioning, socialization, and hygiene. She did graduate high school, but was unable to complete college course or interact with other students. She is abusive both verbally and physically to her grandmother. I have seen scratches and bruises on her grandmother with fingerprints. Self mutilation is noted at times with open sores noted frequently. Has had several teeth pulled under anesthesia due to anxiety/panic attacks and hostility toward dentist and assistants. She sleeps long periods of time through the day and stays on the computer at night. She is unable to follow instructions or complete simple tasks. Her grandmother now washes Cortney's hair and assists with her bath. She is unable to cook or clean (unsafe and forgetful). When tasked with getting a few groceries or household items with limited funds, she will return with junk food and/or toys and states they didn't have what you wanted. On rare occasions she would go to a movie alone or to a "My Little Pony"

---

[2] Tr. 32.

gathering. She is no longer able to do those things due to anxiety.

Tr. 34.

The fourth item of new evidence is a May 16, 2017 letter from Clara Christopher, a Peer Advocate from an organization called "Disability Rights & Resources." Ms. Christopher stated:

> I met Cortney Painter on November 18, 2016. She was very withdrawn. She sat in the chair in a fetal position. It was 60 degrees outside and she had on a winter coat with a hood on her head. Her face was verily [sic] visible. She didn't talk, except to answer a few questions. The answers were one word. I explained our services. I told her about the Peer Support group that meets once a month. She said she doesn't do groups. I told her we could do individual Peer Support.
> 
> Next meeting: December 8, 2016. Cortney came to my office for 1 on 1 Peer Support. We talked about what she does every day. Cortney said she doesn't do anything. She said she doesn't cook or wash clothes because her grandmother tried showing her, but she tore up the washer and the stove. Cortney said she has a phobia about going to sleep. I asked her what she meant and she said she puts stuff around her, so she will be surrounded with those things. She says she doesn't like going outside.
> 
> Cortney has continued coming to my office each month for one hour Peer Support. Her appearance in the six months has not changed. She comes with soiled cloths [sic], hair matted, and always wears a heavy overcoat. We have begun working on the goals that she has chosen. They are Self-Care and Community Based Living. We have talked about grooming and hygiene. It is a very slow process.
> 
> We have discussed coming to the group meeting, but she says she can't.

Tr. 36.

The final item of new evidence is a group of medical records from Mountain Lakes Behavioral Healthcare. Records signed by nurse practitioner Belinda Herring on August 16 and November 11, 2016 note that claimant has been diagnosed with schizoaffective disorder and post-traumatic stress disorder.[3] A March 7, 2017 Intake Evaluation form also included a diagnosis of schizoaffective disorder and post-traumatic stress disorder. An individual identified as "Mary Dana McCarley, MA" provided the following assessment:

> Client is a 21 years old single Caucasian female currently residing with maternal grandmother. Grandmother (ROI) was present during session for support. Client has received services from this agency since 2016 and presents today to update information for continuity of treatment of "schizoaffective disorder." Client is reporting abuse history, family history of mental illness, and inpatient hospitalization within the year.
>
> Appearance: Client presents with eccentric appearance that was inappropriate for weather. Client was was [*sic*] wearing fleece jacket that was zipped completely up with hoodie on her head. Client had her entire face covered for most of the interview. Client appears to be of average intelligence and has had some college. Speech was normal. Motor activity included sitting on the floor beside the desk during parts of interview. Mood was anxious and irritable with congruent affect. Client does not report experiencing current [suicidal or homicidal ideations]. Client does report experiencing passive thoughts of dying and perceptual disturbances.
>
> Current symptoms, issues, behaviors, etc: Schizoaffective Disorder: unstable mood patterns, fluctuations in energy levels, appetite and sleep patterns, impulsivity, irritability, distractibility, agitation, racing thoughts, rapid/pressured speech, functional impairment, feelings

---

[3] Tr. 43-44.

> of detachment/estrangement, exaggerated startled response, hyper vigilence, apprehension, fearfulness, sense of foreshortened future, intrusions, avoids thoughts associated with trauma.

Tr. 42 (alteration supplied).

The Appeals Council did not consider the August 16, 2016 records from Belinda Herring at Mountain Lakes Healthcare — the only new records that bore a date prior to the ALJ's decision — because "this evidence does not show a reasonable probability that it would change the outcome of the decision."[4] That decision was correct. The August 16 note only re-confirmed mental health diagnoses that have been stated elsewhere in the record. It did not provide any additional information regarding claimant's functional abilities.

With regard to the other new items of evidence, however, the Appeals Council stated: "The Administrative Law Judge decided your case through September 29, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 29, 2016."[5] This court agrees, but only with regard to the May 16, 2017 letter from Clara Christopher. Ms. Christopher stated that she met claimant on November 18, 2016, *after* the ALJ's decision, and there is no indication that she had any information regarding claimant's condition before that time.

---

[4] Tr. 2.
[5] *Id.*

The other items of evidence, however, could have some bearing on claimant's condition prior to the date of the administrative decision. Ms. Whisenant's May 16, 2017 letter referenced claimant's "past" destructive hallucinations, the cumulative effect of claimant's water phobia on her hygiene and dental health over time, and her "history" of abuse.[6] Because claimant had been a patient at Mountain Lakes Behavioral Healthcare, where Ms. Whisenant is employed, since March of 2015,[7] Ms. Whisenant would have had access to claimant's mental health records from before the administrative decision date. Martha Painter, claimant's grandmother and legal guardian, obviously was familiar with claimant's condition prior to September 26, 2016. Although Ms. Serian's letter was undated, it stated that Ms. Serian had known claimant and been familiar with her mental health condition for seven years, which would have been before the administrative decision. Finally, the March 7, 2017 Intake Evaluation Form from Mountain Lakes Behavioral Healthcare specifically referenced claimant's status as a patient since 2016 and did not indicate that her condition had worsened over time.[8] Thus, even though these items of new evidence were dated after the ALJ's decision, they could reasonably be construed as relating back to the time period before that decision.

---

[6] *See* Tr. 31.
[7] *See* Tr. 703-05.
[8] *See* Tr. 42.

Moreover, the new evidence could have had a material effect on the administrative decision. All of the new evidence reported extreme emotional behaviors — including poor hygiene as a result of water phobia, destructive hallucinations, violent behavior that has required police intervention, irresponsibility, self-mutilation, and inappropriate dress — that could interfere with claimant's ability to work. The details of most of those reports exceed the levels of impairment that were previously discussed in the record, and even if none of the new records, standing alone, would be material to the disability determination, their cumulative effect would be.

Accordingly, the Appeals Council erred in not considering the effect of Cheyenne E. Whisenant's May 16, 2017 letter, Martha Painter's and Naira Serian's undated letters, and the Mountain Lakes Behavioral Healthcare records from September 29, 2016 and afterwards. Remand is warranted for the Commissioner to consider those records, and to conduct any other appropriate proceedings.

The decision of the Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk is directed to close this file.

DONE this 8th day of June, 2018.

_____
United States District Judge